Judgment rendered June 29, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,550-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

MANAGEMENT GROUP FOUR,               Plaintiff-Appellant
L.L.C.

versus

L B ELECTRIC, L.L.C.                 Defendant-Appellee

* * * * *

Appealed from the
Forty-Second Judicial District Court for the
Parish of DeSoto, Louisiana
Trial Court No. 81,360

Honorable Nicholas E. Gasper, Judge

* * * * *

HYMEL, DAVIS & PETERSEN, L.L.C.      Counsel for Appellant,
By: Michael Reese Davis             Management Seven,
    Tim P. Hartdegen              L.L.C.

LAW OFFICE OF KATHLEEN E.
PETERSEN, LLC
By: Kathleen E. Petersen

LUNN IRION LAW FIRM, LLC             Counsel for Appellee
By: James A. Mijalis
    W. Orie Hunter, III

* * * * *

Before PITMAN, THOMPSON, and MARCOTTE, JJ.

THOMPSON, J., concurs with written reasons.

**PITMAN, J.**

Management Seven, L.L.C. ("M7")[1] appeals the judgment of the trial court, which sustained a peremptory exception of peremption and found that six back-up generators in several nursing homes became component parts of the immovable after their installation and that suits on their defective installation were subject to a five-year peremptive period. For the following reasons, we affirm.

### FACTS

Between June and December 2011, M7, a company domiciled in DeSoto Parish, was the managing agent for six Louisiana health care facilities in various parishes in North Louisiana. These facilities were nursing homes and rehabilitation centers located in the parishes of DeSoto (2), Vernon (1), East Carroll (1), Allen (1), and Calcasieu (1). During that time, M7 purchased "standby," or back-up, emergency generators for each of the six health care facilities. The cost of the generators was more than $489,000. After the purchase of the generators, M7 entered into oral contracts with L.B. Electric, L.L.C. ("LB") to install each of these generators in accordance with professional standards, including the mandatory standard, electrical, safety, building and fire codes.

M7 expected LB to properly install each generator to the manufacturer's specification and in full compliance with all required mandatory standards and codes. After the generators were installed between August 2011 and May 2012, M7 began using them for their intended

---

[1] The original petition filed in this matter incorrectly named Management Four, L.L.C. as the plaintiff, but an amended petition corrected plaintiff's name to Management Seven, L.L.C.

purposes. M7 claimed that between 2017 and 2019, there were problems with four of the six generators. ARCCO of Baton Rouge performed repairs on those four generators at a cost of $76,241.72. The amount alleged due included the cost of repairs and the replacement of the ATS switch on all of the generators (this switch on the generator in Calcasieu Parish was replaced three times) and the rental of temporary replacement generators to use while the back-up generators were down for repairs. When ARCCO repaired the Calcasieu generator in late May 2019, it informed M7 that the generator had experienced "multiple controller failure," possibly due to the lack of proper grounding.

At a cost of $4,100, M7 hired an electrical engineer to inspect the generators at all six facilities, and he found that none of them installed by LB between 2011 and 2012 were properly grounded. The engineer reported that among the hidden defects included were ground rods missing between the generator and transfer switches and/or existing switchboards.

M7 hired Scotty Carline Electric, Inc., of Many, Louisiana, to fix the grounding defects of all six generators at a cost of $52,335.05. In May 2020, M7 filed suit against LB for breach of contract and negligent installation, alleging that it was liable to them for the costs of $76,241.72 for the 2017-2019 repairs and rentals, $4,100 for the engineer who inspected the generators and $52,335.05 to correct the installation problems.

LB answered and filed a peremptory exception raising the objection of peremption based on La. R.S. 9:2772. It argued that the statute imposed a five-year peremptive period within which plaintiffs had to bring an action against any person performing or furnishing the design, planning, supervision, inspection or observation of construction or the construction of

2

immovables, or improvement to immovable property. The statute also states that the five-year period ends at the fifth anniversary of the date of registry in the mortgage office of acceptance of the work by the owner or, if no acceptance is recorded within six months from the date the owner has occupied or taken possession of the improvement, in whole or in part, more than five years after the improvement has been occupied by the owner.

The trial court heard and sustained the exception of peremption in favor of LB, finding that the generators would be considered a component part of the immovable and that La. R.S. 9:2772 operated to perempt M7's claims after five years.

M7 appeals the ruling of the trial court sustaining the exception of peremption and dismissing its suit against LB.

**DISCUSSION**

M7 argues that the trial court erred in holding that the installation of the generators constituted construction of an immovable or an improvement to an immovable within the meaning of La. R.S. 9:2772 and in finding that the peremptive period of five years found in La. R.S. 9:2772 applied to defeat its cause of action against LB. It contends that the emergency generators are not immovables; and for the statute to apply, they have to be component parts of the healthcare facilities under La. C.C. art. 466. It argues that by their nature, the back-up generators are not permanently attached and do not complete the buildings so as to become component parts of the facilities.

M7 further argues that La. C.C. art. 466 states that when a decision is made regarding whether something is a component part, the specific use of a building is not to be considered, nor is any specific industrial or commercial

3

activity that may happen to be conducted within the building to be considered. Extrapolating from that statement, it contends that the issue presented is whether, according to societal expectations, a back-up generator serves to complete a commercial building. It asserts that these emergency generators do not and are simply useful in the event of a power outage and are not component parts of the healthcare facilities. It argues that they remain movables, and La. R.S. 9:2772 only applies to immovables.

LB argues that under La. C.C. art. 466, the back-up generators qualify as both improvements to immovable property and as component parts of the buildings to which they provide energy in times of electrical system failures. It contends that they are component parts of the immovable electrical systems to which they are attached and that the judgment of the trial court was correct in interpreting both La. C.C. art. 466 and La. R.S. 9:2772 to find that M7's causes of action are perempted.

LB asserts that the last payment made by a facility in DeSoto Parish was May 14, 2012, and that the original petition was filed on May 12, 2020, years after the five-year peremptive period provided for in La. R.S. 9:2772. It argues that M7 failed to meet its burden of proving its causes of action were not perempted because the petition alleges that the health care facilities began using the six back-up generators for their intended purposes as soon as they were installed.

La. R.S. 9:2772 states, in pertinent part, as follows:

A. Except as otherwise provided in this Subsection, no action, whether ex contractu, ex delicto, . . . shall be brought against any person performing or furnishing . . . the design, planning, supervision, inspection, or observation of construction or the construction of immovables, or improvement to immovable property [.]

4

(1)(a) More than five years after the date of
registry in the mortgage office of acceptance of the
work by owner.

(b) If no such acceptance is recorded within six
months from the date the owner has occupied or
taken possession of the improvement, in whole or
in part, more than five years after the improvement
has been thus occupied by the owner.

Peremption is a period of time fixed by law for the existence of a

right. La. C.C. art. 3458. The right is extinguished upon the expiration of

the peremptive period. *Id.* When the peremptive period has run, the cause

of action itself is extinguished unless timely exercised. *Rando v. Anco*

*Insulations Inc.*, 08-1163 (La. 5/22/09), 16 So. 3d 1065. The following rules

governing the burden of proof as to prescription apply to peremption. *Id.* If

prescription is evident on the face of the pleadings, the burden shifts to the

plaintiff to show the action has not prescribed. *Id.* If evidence is introduced

at the hearing on the peremptory exception of prescription, the district

court's findings of fact are reviewed under the manifest error-clearly wrong

standard of review. *Id.* If the findings are reasonable in light of the record

reviewed in its entirety, an appellate court may not reverse even though

convinced that had it been sitting as the trier of fact, it would have weighed

the evidence differently. *Id.*

Tracts of land and their component parts are immovables. La. C.C.

art. 462. Things incorporated into a tract of land, a building or other

construction so as to become an integral part of it, such as building

materials, are its component parts. La. C.C. art. 465.

La. C.C. art. 466 provides in part as follows:

Things that are attached to a building and that, according to
prevailing usages, serve to complete a building of the same
general type, without regard to its specific use, are its

5

component parts. Component parts of this kind may include doors, shutters, gutters, and cabinetry, as well as plumbing, heating, cooling, electrical, and similar systems.

Things that are attached to a construction other than a building and that serve its principal use are its component parts.

In *Chesney v. Entergy Louisiana, L.L.C.*, 49,816 (La. App. 2 Cir. 5/27/15), 166 So. 3d 1204, the court concluded that an overhead high voltage power line involved in plaintiff's injury was an immovable, or improvement to an immovable, within the meaning of La. R.S. 9:2772. The *Chesney* court concluded that the power cable attached to a pole imbedded in the ground was an immovable and was deemed to be a component part within the meaning of La. C.C. art. 465. The court opined that the power cable carried electricity to the landfill and served the power pole's principal use. A purchaser of the landfill would expect the power cable to be conveyed with the property along with the rest of the power system, and the power was essential to the facility's operation. Hence, the cable was a component part of the power system under La. C.C. art. 466. After finding that the cable and pole were component parts of the immovable, this court stated:

Because the power system, including the uninsulated power line that Chesney's truck contacted, was an improvement to an immovable within the meaning of La. R.S. 9:2772, the trial court correctly determined that the plaintiffs' claims that fall within the scope of this article are perempted.

In the case at bar, we find that the emergency generators installed by LB became component parts of the electrical system of the nursing homes. The generators were hard-wired into the electrical systems of the buildings to which they provided back-up power when the systems failed, as well as having a natural gas connection to power the generators. Furthermore, as in

6

*Chesney*, *supra*, a purchaser of the nursing homes/rehabilitation centers would expect these generators to be conveyed in a sale. The generators were critical to the continuing operation of the health care facilities when the original systems failed.

We also find that under La. R.S. 9:2772, M7's causes of action have been perempted by the passage of more than five years from the date the improvement was occupied by the owner. A review of the pleadings in this case indicate that the last payment M7 made to LB on behalf of the DeSoto facility was May 14, 2012. The original petition in this case was filed on May 12, 2020, far later than the five-year preemptive period found in La. R.S. 9:2772.

This assignment of error is without merit.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court sustaining the peremptory exception of peremption in favor of L.B. Electric, L.L.C, and dismissing the suit of Management Seven, L.L.C., is affirmed. Costs of this appeal are assessed to Management Seven, L.L.C.

**AFFIRMED**.

**THOMPSON, J., concurring.**

I write separately to acknowledge that the advent of technology is shrinking the size and enhancing the efficiency of alternative power sources, such as generators and battery back-ups.  Generators have historically been cumbersome to attach and disconnect.  The installation or removal process may have caused damage to the immovable the generator serves.  In those former instances, a generator lost its nature as a movable and rightfully became a component part of the immovable.

We have witnessed the development and exponential growth in the power and life of batteries – from flashlights, to vehicles, to home solar panel systems.  We have progressed from satellite antennae being the size of a vehicle to small and portable systems, such as streaming via WIFI.  Likewise, there have been significant advancements in technology that reduce the size and increase the output of standby generators.  Generators are now designed for easy installation and replacement or removal.  Today's generators might spend their entire existence a good distance away from the immovable, and are easily disconnected from that distance without ever approaching the immovable.  Certainly, continuation of these technological developments will necessitate a serious review of what is a component part and what is not.  Modern inventions and improvements thereon do not necessarily fit neatly into the current language of La. C. C. art. 466, and this problem will intensify as time passes and technology advances.

I concur in the result of this matter, because regardless of any desire to delve into considerations such as independent existence of the generator, its remote location from the immovable, and the ease of removal and replacement, there is no escaping the conclusion that when the power goes

1

out and the generator cranks and starts to send power to the building, it could easily be considered part of the "electrical system" of the immovable. A generator's classification as a component part of an immovable may not have been envisioned or contemplated by La. C. C. art. 466, but that is what the clear and unambiguous language of the code article provides. Technological advances will continue to require continued discussion and analysis. As for the specific facts in the matter before us, I concur this is the proper result.